## THOMAS *versus* ADAMS.

The act of 1820, extending the jurisdiction of the Circuit Court of Cotaco (now Morgan) County, &c. to all the tract of country belonging to the Cherokee Indians; vested in the Circuit Court, the jurisdiction only, of crimes and misdemeanors committed within those tracts of Indian country; and did not extend thereto, the civil jurisdiction of Justices of the Peace, in cases of forcible entry and detainer.

The act of 1832, extending the jurisdiction of the State over the Cherokee Nation, is not entitled to a retroactive operation, so as to authorise proceedings for a forcible entry committed on lands in the Indian nation, prior to the passage of that act.

Thomas instituted proceedings of forcible entry and detainer, in a Justice's Court, in St. Clair county, to recover possession of a tract of land lying in the Cherokee nation, from which, as was alleged, Adams had with force ejected him. A judgment, rendered by the Justice in favor of the plaintiff, was removed into the Circuit Court, by *certiorari*, where the defendant contended that the forcible entry was charged to have been committed before the jurisdiction of the State Courts was extended over the territory in question. The Circuit Court reversed the judgment rendered by the Justice, and the case was brought into this Court by writ of error.

P. MARTIN, for Plaintiff—Contended, that on this point it was impossible to reverse the cause. Whatever question might have arisen as to the jurisdiction of the Court, had the trial taken place, immediately after the entry was committed, was no question now. The act of Assembly extending the jurisdiction of the Courts over the Indian territory, was passed before the trial took place, and gave the Justice, unquestionable jurisdiction. But, independent of that act, it might safely be contended, that the proceeding

could have been supported on the authority of the statute of 1818, which permitted process to run into the Indian territory.

If jurisdiction be not maintained, in cases like the present, what is to control trespasses committed on citizens in the Indian nation, or what tribunal is to adjust civil controversies, between different individuals ?

PECK, *contra*—Said, that the forcible entry, if committed at all, was committed in the Cherokee nation, beyond the jurisdiction of our Courts, and before the act of Assembly extending jurisdiction, was passed. The law of forcible entry, for aught that appeared, had no existence in the Indian nation, at the time the trespass was alleged to have been committed. Under these circumstances, the passage of a statute subsequently extending jurisdiction, could not give any ground of suit. If it be said, that the statute only gives the remedy, I answer, that an extraordinary remedy, like this, given by statute, cannot reach back, and operate on acts done, before the law existed.

If the country had been taken by conquest, even then, such retrospective proceeding would not be admissible.

Again : the act extending jurisdiction, if reaching to such a case as the present, was clearly unconstitutional, being in violotion of subsisting treaties.

By Mr. Chief-Justice SAFFOLD :

This was an action for a forcible entry and detainer, tried in the county of St. Clair. Thomas was plaintiff below. His plaint to the magistrate, charges, that in 1830, he was in possession, as tenant at the will of the United States, of a certain improvement, of fifty acres or more, of emigrated land, part planted

in corn, and containing, at the time of the trespass, three dwelling houses, a kitchen, a crib with corn in it, also a quantity of farming utensils, &c.—all lying and being within the county of St. Clair, State of Alabama, in *the Cherokee Nation,* known and designated there, as " the Old Village," on Tarapin creek ; and that being so possessed, and peaceably enjoying the same, the defendant, Adams, with force and arms, entered upon, and dispossessed him, and continues to detain the premises aforesaid.

On the trial before the justice, a verdict and judgment were rendered in favor of the plaintiff.

The cause having been removed into the Circuit Court by *certiorari,* Adams assigned for error, various causes, among others, that it appears from the petition and complaint, as made to the magistrate, that the forcible entry complained of, is charged to have been committed in the county and state aforesaid, "in the Cherokee nation," and on " emigrated land," and that this was before the jurisdiction of the Court was extended over that portion of the Cherokee nation.

The Circuit Court reversed the judgment of the Justice, and gave judgment in favor of the defendant, for his costs expended ; to reverse which, the plaintiff now prosecutes this writ of error.

The ground of error relied on in this Court, is, that the Circuit Court reversed the judgment of the Justice, for the causes assigned.

According to the view we have taken of the case, the exception alluded to, is decisive of the contest, and the one point alone will be considered. The others are peculiar to this case, involving no material or general principle.

My examination of the subject will be directed to the inquiry, whether, in 1830, when this trespass is charged to have been committed, the laws of the State

had been so extended over the lands in question, as to sustain the proceedings which were had before the magistrate; and if not, whether the subsequent extension alone, or that aided by the Common Law, was sufficient—the extension having taken place before the institution of suit?

The action was commenced in May, 1833. In 1820, it was declared by statute,[a] that "the *Circuit Court* of Cotaco (now Morgàn) county, shall have jurisdiction, and the county shall embrace all that tract of country lying west of Willstown Valley, and belonging to the Cherokee nation of Indians. And the county of St. Clair shall *embrace* all that tract of country belonging to the Cherokee nation of Indians, in Willstown Valley, and east of the same. Also, that "the expenses of prosecuting and supporting criminals who are prosecuted for offences committed on Indian lands, shall be paid out of the contingent fund, upon a certificate of the Judge, made out, as in cases now provided for by law."[b]

It is to be observed, that this act purports an extension of only Circuit Court jurisdiction over the Cherokee nation, and that, as respects St. Clair, it does not even to express that. But, in as much as the first clause of the first section, gives jurisdiction to the Circuit Court of Morgan, and expresses that this county shall embrace one portion of the nation; and the latter clause expresses that St. Clair county shall embrace the residue of the same nation, the intention of the Legislature to extend to the latter county, the same jurisdiction, may well be inferred. Yet, they appear to have been cautious in the terms used, to effect the contemplated extension. The comprehensive language, "civil and criminal jurisdiction," as often employed on other occasions, seems to have been purposely avoided, and the more limited expres-

*[a] Aik. Dig.222, § 1.*

*[b] Aik. Dig.223, § 2.*

sions used, that the *Circuit Court shall have jurisdiction, and the county shall embrace, &c.* Nor is any attempt made to designate the particular boundaries of country thus to be embraced within the two counties; it being only said, that the part lying west of the Valley should be embraced by the one, and that the Valley and part east thereof, by the other. These peculiarities in this statute, and the provision made in the second section, for defraying the expenses of criminal prosecutions, together with the consideration, that, according to the Constitution of the State, in all criminal prosecutions, the accused has a right to a speedy public trial, by an impartial jury of the county or district in which the offence shall have been committed, I think fully warrant the conclusion that nothing more was contemplated by this statute, than to vest in the Circuit Courts of these counties, jurisdiction of crimes and misdemeanors, committed within these tracts of Indian country. No power can be exercised by tribunals of special or limited jurisdiction, except such as has been expressly given. I am, therefore, of opinion, that the qualified extension of jurisdiction to the Circuit Court, as expressed in the above recited act, had not the effect to extend the civil jurisdiction of Justices of the Peace, over the same tracts of country; and without which there could have been no authority for the proceeding, unless the jurisdiction has been subsequently given. It may also be noticed, that at the time this injury is charged to have been committed, no act of our Legislature had declared any abolition of the laws, usages, or customs then in force in the Cherokee nation.

But it is contended in argument, that if the statute referred to, be insufficient to sustain the proceedings in this case, the subsequent act of 1832, being

anterior to the institution of this suit though subsequent to the entry, furnishes the requisite authority.

It is true, that acts were passed at the session of 1831 '32, in terms very different from those used in 1830. An act' of this session, declares an extension ᵃAik. Dig.224. of the civil and criminal jurisdiction of the State over all the Indian territory within the same; also, an abolition of all laws, usages, and customs, then used, enjoyed, or practised, by the Creek or Cherokee Nations of Indians, within the limits of the state, which were contrary to the constitution and laws thereof.

At the same session another act was passed, entitled "An act to designate the boundaries of certain counties therein named," (but I do not find in the late Digest,) which, according to designated boundaries, extended the county of St. Clair over a portion of the Cherokee nation, and also extended other counties in like manner over the residue.

In as much as the plaintiff's complaint before the Justice, charges this forcible entry to have been committed in the county of St. Clair, "in the Cherokee nation," and "on emigrated lands;" a description which is inapplicable to any other part of the county, except that over which the boundary was extended by the act last referred to; and as the counsel, on both sides, treated it in argument, as being in that part, we feel bound so to consider it. Then, the question arises, whether the Courts are authorised to give to this act, extending the laws of the State over that tract of country, subsequent to the commission of the trespass, such retroactive operation, as will entitle the plaintiff to the relief sought. This point of the case would admit of extensive investigation, if the matter in controversy was of sufficient importance to justify it: as it is, however, I will content myself with a brief examination of the principle.

As a general rule, the *remedy* for the assertion of existing rights, is always subject to the *lex fori,* and the Legislature is competent to modify, regulate and apply it, at discretion: but rights, in contradistinction to the remedy, as title to property, the validity and effect of contracts, &c. must be governed by the *lex loci.* As a consequence of this principle, if a right of action has arisen without the jurisdiction of this State, and the party subject to it, afterwards come within the jurisdiction ; or if the jurisdiction be extended over the person—the action in either case being transitory in its nature ; or, if the jurisdiction, in case of a local action, be extended over the subject matter ; in all these cases, the Courts of the State are competent to enforce, the right, according to the forms prescribed for the government of our Courts. The exception may exist, that our Courts would not be bound to administer a law of a different country, if found incompatible with our public policy. In administering justice in such case, we should be governed, in reference to the right or title, by the law of the place or country where it originated; but in applying the remedy we can be governed alone by the forms prescribed for our own Courts. If the law, establishing the right, be not proven to the Court, and it is one which exists at Common Law, on the presumption that such is the law of that contract or other subject matter, we are authorised to apply it accordingly. If the right claimed, have no foundation in the Common Law, and the law of the place be not established, our Courts can have no warrant for sustaining the supposed right, and must, of course, refuse it. This principle I consider no less applicable to the Cherokee nation while the laws, usages, and customs of the country existed, than to any other government; and if, from the condition of their laws, they cannot be proven

elsewhere, the only consequence is, that the principles of the Common Law must be applied. This rule is founded in necessity; without it, there could be no authority for entertaining a suit on any bond or note, or enforcing any right, originating in that place, or elsewhere, beyond the jurisdiction of our own Courts.

According to the Common Law, if a man had a right of entry in himself, he was permitted to enter with force and arms; and to detain his possession by force, where his entry was lawful. If he thereby subjected himself to a prosecution, it was only to an indictment for a breach of the peace, where force and violence were in fact used.[a] It is true, that such person, like all others in possession of lands, was subject to civil suits, to try the true right of property, or the right of possession, as either might exist at law. But in such suit the estate or merits of the title were subject to examination, and were sufficient to determine the controversy according to the rights of the parties, whether absolute or limited. The right of the plaintiff to restitution did not depend, as provided by our statute, on proof of a mere *forcible entry and detainer*, or *forcible and unlawful detainer*, but on the legal right to possess and enjoy the premises, at least for a term. Under the statute, one who is legally entitled to present possession of the lands, by the means of obtaining the same, as in case of a forcible entry and detainer, may subject himself to ouster, by the summary remedy resorted to in this case. The statute has declared, that in this action, " the estate or merits of the title, shall in no-wise be inquired into." The consequence is, that in this case, the defendant may have entered, as by the Common Law he lawfully might, and yet, under the statute, be subject to immediate restitution to him who had the prior,

[a] 4 Com. Dig. Entry A. "Note (a)—Bac. Ab. Forcible Entry and Detainer.

though unlawful possession. The object of the statute was merely to prevent the violence and general mischief resulting from the Common Law right, of forcible entry &c.

Then, the correct rule of construction, does no' give to the act, extending the jurisdiction of the State over the Cherokee nation, that retroactive operation which would be necessary to entitle the plaintiff to the relief sought. Had the law been thus extended, before the forcible entry was committed, the principle would be entirely different, as it would also be, if the right claimed, under the facts of the case, would, at Common Law, entitle the plaintiff to immediate restitution.

From this view of the subject, alone, it results, that the judgment below, must be affirmed.